24-1166 Western Missouri, United States v. Laguerre Payen Ms. Kurz May it please the Court, I am Rebecca Kurz arguing on behalf of Mr. Laguerre Payen today. Mr. Payen had a 25-year sentence that a New York District Court reduced in a compassionate release motion, sentencing him to time served plus 90 days. That prompted the government to file a petition to determine his present mental condition and a 4246 hearing was determined and in the report and recommendation As opposed to the court's mandate that he at least had to start in a supervised situation New York District And the government elected to proceed civilly Correct. Correct. The two paths to where we are today are not inconsistent, I don't think. Two alternative ways of doing it. I think the problem with the, or maybe what would have been better prior to the New York ruling was that an actual placement in the community could have been found. Not just being in the process of looking for one. I think that, honestly, I have to admit that that would be better for Mr. Payen. He can't just be released on the streets, it's not going to work. What I'm quibbling with in the report and recommendation that was adopted by the District Court, the finding was based on lack of insight, history of severe mental illness, history of violence in the community and in BOP custody, the judge found that there was clear and convincing evidence of a substantial risk of bodily injury to another if he's released. I don't quibble with the lack of insight, that is shown in the reports, it's been proven. I don't quibble with the history of severe mental illness, that's well documented over since 2011. What I do quibble with is his history of violence in the community and in BOP custody. I believe that the proceedings below went wrong and that we should have a new hearing. When the government filed its petition, it included the one page, the last page, page nine of nine of the New York District Court order saying he should be released. The memorandum opinion was not attached to, as far as I can tell, their petition. The defense... It wasn't in our record either. Well, I had a Westlaw citation by then, I included it in my statement of facts, I used it quite a bit, it's a great order. But what failed on our side... Well, it wasn't so long, it couldn't have been in the addendum. Just for future reference. For future reference, yes, sir. For judges who don't like to go online if they don't have to. Noted. Noted. But at the 4246 hearing, defense counsel presented very brief testimony from Mr. Payen, but did not offer the New York District Court order. I'm not sure that the magistrate judge or even the district court judge was aware of the content. They obviously were aware that the sentence had been reduced and probably assumed there was some good reason for that. And the content of the order is important. The government characterizes... You don't think the district court did what, you know, what I did? Go find it and read it? Right. Possibly, but it's not reflected... We assume that our district judges do that kind of... Because there's nothing in the report and recommendation indicating that. If I saw some language in there... I don't think there had to be. Well, it's a pretty serious issue. It's one prong, whether this man is a substantial risk of bodily injury to other people. If it's, you know, if this is going to be the basis for the decision, it should be reflected in the decision. He had a lot more probative evidence of that from the two reports, including the defense expert, than the Southern District of New York judge, who wanted to berate the government for its conduct 20 years ago. Well, they wanted to berate the government, but what she also said was, Mr. Payen's actual behavior was not even theoretically dangerous, let alone violent. Nothing about the crimes of conviction was defendant's own doing.  She was the trial judge. She sat through the entire trial. She knew what the FBI... No, the question is today. Yes. The question wasn't when she tried it. But this colors the entire history of this case. Every annual report has assumed this man is a terrorist.  I understand your position. It is not... It is not other than opinion. It's my... Or an argument. It's my opinion and argument. Right. Yes, sir. Yes, sir. But I do believe that the New York District Court order, if it was not considered, should have been, because it greatly changes the characterization of whether he presents substantial risk of violence. Another part of this is, the risk assessment panel used a tool, a risk assessment tool. It's called the Historical Clinical Risk Scheme 20 Version 3. It's... Part of it is based on what they call index offenses, what he was convicted of. He's convicted of conspiracy and attempt to use weapons of mass destruction. Conspiracy and attempt to acquire and use anti-aircraft missiles. Conspiracy to kill officers and employees of the United States. Excuse me. That colors how that risk assessment tool is going to be applied to him. Was there... Did the defense have the ability to present some of this evidence? Like, would there... Defense... Yeah. And what I'm thinking is, what the District Court judge in New York was relying on to make these conclusions, these findings, in the compassionate release order. You know, were those facts, were those sort of circumstances available to the defense such that you could present that to the... In the hearing on the... If we had a transcript of the trial, I would say probably. That might be something that needs to be obtained. What at least could have been done for this 4246 proceeding, though, is to use the New York's memorandum of opinion. And the reason I say that is because what seemed to go wrong in this FBI sting operation is their choice of informant who then roped all of these people into this conspiracy. So the judge was well aware of that man's prior background and how unreliable and how he had no credibility whatsoever. And she said those things. And yet really what you're trying to get at is whether or not your client was roped in as a result of that and he didn't otherwise have any inclination to do these sort of crimes. And I think that's a hard thing to get at. I mean, you've got the District Court's view of it, which I think carries some weight to another District Court. But actually, if a new District Court wanted to get their hands dirty with it, I suppose it would be hard to bring forward witnesses who could provide that kind of an insight. It would be difficult. Does the record reflect whether the panel had the Southern District New York order? The panel did have the order. But again... I mean, that's what you're saying. They should have used it, but if they had it... Well, I'd like to know if it was actually used with that HCR. Wait, wait, wait, wait. The Circuit Court is supposed to order them to have, you know, to go back to the panel and... We could have a remand for another 4246 proceeding to make sure we've had a reliable determination of dangerousness. And the ruling is we have to remand because the panel's... It's not clear that the panel which had the order actually considered it. Doesn't sound like something the Circuit Court does. I think there was... Unless there's specific evidence of not using it. We assume they did the... We assume they did the right thing from their perspective. I'm not going to agree entirely with that because I think there was one case cited in both of our briefs. I think it was Pettaway. I could have the name wrong. But it was where the record in the District Court's 4246 order was incomplete. And this court said, well, it was perfunctory. Now, that case, worse facts than what we have here. I think that was a very short... I didn't see the order. It wasn't, you know, written into the opinion. But the court was like... This was 8th Circuit reversing a 4246... Yes, 8th Circuit sending it back. Because it was perfunctory? Yes, because it was... This wasn't perfunctory. It's not. I just don't know if it's based on a true characterization of this man's violence. He was put into the Bureau of Prisons for five years with no one... Pettaway? At all... treating his mental illness. That's why he has 150 conduct violations. He couldn't cope in that type of setting. For years, he was called a malingerer. That he was antisocial. That he was making all of this up. That he was histrionic. Now, thank goodness... Now, your brief describes Pettaway as a case where the court fails to demonstrate through its findings that it's considered strongly conflicting evidence. And I contend we have strongly conflicting evidence. This man's not a terrorist. And that's how he's been colorized throughout his entire... It was available to the district court. It was available to the panel. It wasn't cited.  This is like... You know, you don't... You don't have to... In denying a variance, you don't have to... You don't have to recite everything that was argued. Or otherwise, you'll get reversed. We have tens of cases that say that. And this seems quite comparable. I would say, and I'm well over my time... No, no, I... That this man is... Is committed indefinitely. And he is not in prison. He is committed to the care and custody of the Attorney General. Subject to very statutory, mandated... Yes. ...reviews. But I feel, and you're right, personal opinion, personal argument, that he's entitled to more. I understand. Thank you.  Mr. Nelson. May I please the Court? Thank you, Your Honor. Your Honor, 18 U.S.C. 4246 does require a determination of dangerousness. The issue in this case arose when, due to the fact that Mr. Payen was under a 4245 commitment, as a matter of course, he was evaluated for dangerousness upon the compassionate release grant. So, to... to Judge Loken's question,  I believe it is correct that what occurred here under 4246 is not inconsistent with what the compassionate release order was... was requesting, which was that Mr. Payen be placed into a mental health treatment. Now, as part of that 4246... I don't know where he gets it. It's kind of a difference where he gets it. Yeah, absolutely, Your Honor. And regarding that risk assessment panel report which was submitted, as Your Honor noted as well, that there are specific... specifically included within the sources of information that the risk assessment panel relied upon is the memorandum order from the district judge. And the defense experts as well quotes the... on page two of her... of her order... or, sorry, of her opinion quotes language that does come specifically from Judge McMahon's memorandum out of the Southern District of New York. So this was considered by the experts. And I think it's worth noting pointing out that 4246 is requiring district judges to make a predictive determination. It's a question of whether or not Mr. Payen or any individual under 4246 will pose a danger in the future. It's a question of what might happen if that person's released. And that's the rationale behind our clear error review here. And in this case we have as appellant noted the 150 BOP code violations within while Mr. Payen was in custody 30 of them were for assault. There are two separate assaults which were an assault and a burglary conviction involving a BB gun which occurred prior to Mr. Payen's federal custody. His lack of insight as well which I think comes through pretty well when Mr. Payen is asked in the hearing are you have you been diagnosed with  And he specifically says that's what they've told me. That statement alone indicates a lack of and when you couple that with a failure to comply with the medication regime and Your Honor it would be difficult for to conclude the district court had failed to consider clearly conflicting evidence especially considering the agreement between the experts in this case. And Your Honor I believe I spoke about this briefly in in my brief the this issue alone was never brought before the district court in the first place.  while the district court we would argue the district court did consider via the risk assessment panel did consider that compassionate release order. If the specific circumstances of Mr. Payen's underlying present offense were specific were something that should have been brought in the district court independent of the risk assessment panel appellant had the opportunity to bring that multiple times. There was not only the report and  there was the hearing this was not mentioned as well in the objections to the report and  So it's the position of the United States that this particular issue has been waived but I don't want to belabor the point your honor if you have When you say this particular issue has been waived what do you mean by that? Particularly whether the offense of Mr. Payen's terrorism offense and the determination by the district court in the southern district of New  whether those should have been specifically considered by the district court that issue was never brought. Is that forfeited? Yes. Maybe not waived? Yes your  In other words there wasn't an affirmative we agree you don't have to look at what the southern district of New York said. When you say we For a  it has to be some sort of statement that we're okay with it as is you don't have to look at that district court opinion from New York. You're not saying that happened you're just saying nobody raised it you didn't raise it they didn't raise it I just want to make sure I understand the record. I apologize your honor. With that your honor the United States is prepared to stand on its briefs unless there are any further questions and requests that this court affirm the district court's order. Thank you. Thank you. Would you like a minute? I think we're I think we're up with the briefs and a good argument. I think so as well your honor. Just one other thing I wanted to mention though just by way of contrast. This gentleman's criminal record prior to this terrorist conspiracy was petty theft possession of  disorderly conduct. He had an attempted burglary second degree got six months jail time on that violated his probation I think was sent down for two years and then his violent crime was attempted assault with intent to cause physical injury and he served four time in a New York state prison for that. When you compare the two his whole history those offenses don't rise to the level of substantial risk of bodily injury to another person. You throw in the terrorist related convictions in New York it colors the whole picture it changes how everyone views this man. In the first    things in there saying he was focusing too much on perceived injustices. Well, there were injustices in this case. Those aren't figments of his imagination not things he created. My goal here is to just get more information to both the FMC because there will be more   You're right. The issue was not waived. It would be forfeited. It is the government's burden to prove he's a substantial danger. I'm asking the full review of the record be considered. Thank you for allowing me to rebuttal. Thank you,  The case has been well briefed and  It's an unusual, long-standing case. Regrettable, but the system has to deal with it. And we will do our best with the appeal to take it under advisement.